QUAN MINH CHAU, ESQ.
California State Bar No. 265505
400 South Flower Street, Suite 39
Orange, CA 92868
(714) 675-0736
ALEXANDRA T. MANBECK, ESQ.
California State Bar No. 178415
P.O. Box 449
Cross River, N.Y. 10518
(619) 573-8139

Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

- - - - - - - - - - - - - - - -- - - - - x

Mohammad Nassiri, Anh T. Thai
Diep Thi Nguyen, Ahmed Mohamed Jeylani
Does 1-100, on behalf of themselves and
all others similarly situated,
                       Plaintiffs,
v.

Carolyn W. Colvin,
Commissioner of Social Security ,
Social Security Administration,
SSA Agent Nick, SSA-Agent 2,
                       Defendants.      :

- - - - - - — - - - - - - - - - - - - -x

'15CV0583 MMA JMA

: **CLASS ACTION COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF**

Plaintiffs Anh T. Thai, Mohammad Nassiri, Diep Thi Nguyen, Ahmed

Mohamed Jeylani, by and through their attorneys, hereby allege as follows:

### I-INTRODUCTION

1.  This is a case of the government's tampering with evidence and

obstructing  justice by waging an ongoing campaign of harassment and

intimidation, and, as a result, creating fear and terror in the Vietnamese, Iranian and Somalian community of refugees and immigrants.  Since plaintiffs filed affidavits in the class action *Diep Nguyen, Anh Thai, et al. v. SSA*, 13-2036 (S.D.Cal. 2003), *appeal pending*, 14-55514(9th Cir. 2014), they have been the subject of a campaign of intimidation by agents and employees of the Social Security Administration ("SSA" or "Agency"). Such illegal campaign began in early 2013 and has continued unabated to the present time in spite of complaints that plaintiffs and third-party witnesses have lodged with the SSA and with this district court. See Exhibit A.

2. This case is brought as a class action to obtain a declaratory judgment that (i) the SSA and in particular, its employees SSA Agent Nick and SSA Agent-2, who are employed by the SSA district office located at 7691 Daggett Street, San Diego, CA 92111 have been maintaining and implementing an illegal search and interrogation policy with respect to plaintiffs, and have violated the plaintiffs' rights to be free from unreasonable searches and inquisition; (ii) SSA has been obstructing justice by intimidating the plaintiffs to recant their prior written testimonies in an ongoing action pending in the Ninth Circuit Court of Appeals; and (iii) SSA has violated plaintiffs' rights to due process as guaranteed under the  Equal Protection of the laws, and have

committed an abuse of process in the exercise of the government's police powers and violated the plaintiffs' due process under the Fifth Amendment. The plaintiffs are also seeking an injunction restraining the SSA from conducting unreasonable searches and seizures, and from harassing and intimidating plaintiffs causing plaintiffs irreparable harm.

## II- JURISDICTION

3.  Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 2201 and 2202. Alternatively, jurisdiction exists under 28 U.S.C. § 1361. Further, with respect to the current SSA employees-defendants, SSA Agent Nick and SSA Agent-2, plaintiffs assert claims against them for violating their constitutional rights and bring this action pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388(1971).  This Court has authority to award costs and attorneys' fees under 28 U.S.C. § 2412.

## III- VENUE

4. Venue in the Southern District of California is proper pursuant to Title 28 U.S.C. § 1391(e) in that all of the named plaintiffs reside in the Southern District of California and a substantial part of the activities complained of occurred in this judicial district.

## IV- PARTIES

5.  All named plaintiffs are resident of the city of San Diego, state of California and are Vietnamese, Iranian, Iraqi or Somalian immigrants receiving or applying for Supplemental Security Income (SSI) benefits and/or Title II benefits.

6.  Defendant Carolyn Colvin is the Commissioner of Social Security Administration and is sued in her official capacity.

7.  Defendant SSA Agent Nick, whose first name is Nick and whose last name is unknown at this time, is employed by the Social Security Administration's district office located at  7691 Daggett Street, San Diego, CA 92111.  SSA Agent Nick is sued in his individual capacity.

8.  Defendant SSA Agent-2, whose full name is unknown at this time, has accompanied SSA Agent Nick to perform illegal searches upon plaintiffs. Like SSA Agent Nick, SSA Agent-2 is known as an employee-investigator of the Social Security Administration's district office located at  7691 Daggett Street, San Diego, CA 92111.  and is sued herein in his individual capacity.

## V- PLAINTIFFS

9.  The named  plaintiffs include four individuals each of whom had been illegally searched and subject to illegal questioning by SSA and SSA Agent

Nick together with Agent-2, either at the plaintiffs' home or some public places;  plaintiffs Does 1-100 include individuals in the class who wish to remain anonymous, or are unidentified at the present time, but who had been searched and interrogated by SSA Agent Nick and/or SSA Agent-2 and any other employee of the SSA, and include all past and future plaintiffs whose names will be added to the list of plaintiffs once they consent to reveal their identities or once their identities are known. The class consists of Vietnamese or Middle Eastern (Iranian or Iraqi) or Somalian immigrants who have been applying for and/or receiving benefits under Title II and/or Title XVI of the Social Security Act due to severe physical and/or mental impairments and had been illegally searched and questioned by defendants. In each of these cases, defendants contacted the plaintiffs *ex-parte* without their attorney, either at their home or at any public place in town where plaintiffs happened to be at the time the SSA defendants visited their home, intimidated the plaintiffs under color of authority and under color of federal law, mislead them and induced them to change their prior written testimonies and/or sign incorrect documents which provide either erroneous or incriminating information which plaintiffs did not understand. Defendants also intimidated plaintiffs in providing personal information and privileged information in violation of the plaintiffs' privacy

right and plaintiffs' attorney-client privilege, even though defendants knew that plaintiffs have been represented by counsel in ongoing litigation in federal court since 2013.

10. As a class, plaintiffs are poor, disabled and non-English speaking Vietnamese or Middle Eastern (Somalian, Iraqi and Iranian) refugees in the United States who reside in San Diego County and who have been applying for or receiving Disability Insurance benefits (DIB) and/or Supplemental Security Income(SSI) benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.*. The plaintiffs comprise a class of claimants who have been represented by Vietnamese-speaking attorney Alexandra Nga Tran Manbeck and have been subjected to illegal searches and interrogations since January 2013 to the present time.

## PLAINTIFF ANH T. THAI

11. Plaintiff Anh T. Thai is a fifty (50) year old former Vietnamese refugee who suffers from carpal tunnel disorder, chronic pain and fibromyalgia, who is unable to communicate in English and has been applying for benefits since 1999. When her application for SSI benefits was pending in the SSA Aero Drive district office, an SSA Vietnamese employee, named Duke Duc Tran, first misled her in 2006 into letting him "help" her apply for benefits, and

began harassing her with threatening phone calls in March 2013 when she obtained legal representation. Duke Tran called her "stupid" in signing loan documents to an acquaintance and berated her for seeking legal representation instead of trusting him to help her. *See* Anh Thai's April 5, 2013 Affidavit and July 25, 2013 Affidavit.

12. After Anh Thai filed her affidavits against SSA in a prior action, *Anh Thai, et al. v. SSA*, 13-civ-2036 (S.D.Cal. 2014), the SSA initiated a campaign of harassment and terror against her. Twice in December 2013 and in January 2014, two SSA agents bearing guns suddenly came to the home of plaintiff, and identified themselves as police agents and proceeded to question Ms. Thai. Most of the questions centered on whether she was really disabled and whether she was required to pay in advance for legal services to her attorney. The SSA agents threatened her with dismissal of her case if she refused to answer their questions. Ms. Thai has filed an affidavit concerning the SSA campaign of intimidation and has been in hiding at relatives' homes since then. SSA has been investigating plaintiff's relationship with her attorney in violation of attorney-client privileges and also in violation of plaintiff' s due process rights. *See* Anh Thai Affidavits dated April 5, 2013 and July 25, 2013. On May 29,

2014, Plaintiff testified as follows concerning the illegal searches and

interrogations:

 2- I was fearful of them [SSA]  because they carried guns and unexpectedly
barged into my home without warning. I was frozen with terror and tried as
best as I could to answer their questions about how I retained my attorney and
whether she had asked me to pay her advanced fees. I finally had a nervous
breakdown and told the agents that I could no longer speak to them.
3- Since the visit by the armed SSA police I no longer stay at Mr. Dat's house
and spend the day mostly with a relative at an undisclosed location. I live in
fear of the SSA who previously had a Mr. Duke Tran call me repeatedly at Mr.
Dat's house and verbally abusing me. I am now terrified of SSA and has been
in hiding with my relatives.

See Anh Thai May 29, 2014 Affidavit.

13. In April 2014, Ms. Thai lodged a complaint with her congressman,

Mr. Peters, who thereafter informed her that the SSA agents "interviewed" her

because "her case was referred to them as possible malingering case," and

based on SSA investigation, "DDS denied the claim." Although SSA informed

Congressman Peters that plaintiff has been applying for benefits since 1999,

this appears to be the first instance of SSA questioning her about her

relationship with her attorney-representative. See Exhibit A (Congressman

Peters' June 4, 2014 response). Plaintiff Anh Thai remains in hiding and is in

worsening physical and mental condition due to morbid fears of SSA agents.

## PLAINTIFF DIEP THI NGUYEN

14. Plaintiff Diep Nguyen is a sixty-two (62) year old former Vietnamese refugee who suffers from neuropathy, carpal tunnel disorder, depression and post-traumatic stress syndrome, and had been applying for benefits since 2002. Plaintiff is the former wife of a South Vietnamese officer who was also a prisoner of war and who had spent years in Communist jail. Plaintiff was unable to obtain benefits since applying in 2002 and became more desperate until she was referred by the President of the Association of Vietnamese Combattants (Hoi Cuu Quan Nhan Viet Nam VNCH) to plaintiff's attorney in 2010. In 2013, plaintiff testified that she had been referred to local attorneys, all of whom refused to represent her. She further testified that it was only because none of the other attorneys represented her that attorney Alexandra Manbeck reluctantly accepted representation, as she would otherwise have no one to represent her and would still be unable to obtain benefits, which she sought since 2002.

15. In April 2013 plaintiff Nguyen was advised that she should seek a new representative as SSA had begun prosecuting her attorney while she was scheduled for an administrative hearing. In desperation and under fear of not being represented at the upcoming hearing,  Ms. Nguyen filed an affidavit

dated July 31, 2013 and joined the class action in September 2013, *Diep*

*Nguyen, et al. v. SSA*, 13-2036 WQH, seeking to prevent SSA from depriving

her of legal representation. In her affidavit dated July 31, 2013, plaintiff stated

as follows:

I am a disabled Vietnamese refugee with severe orthopedic pain and mental
anguish and desperately need to speak to Ms. Tran Manbeck in Vietnamese to
consult about applying for Social Security benefits. Without her I have no
attorney or legal representation as I cannot afford to hire a translator to take me
to another attorney. I am so depressed and I need to speak to my attorney who
comforted me and encouraged me to not give up hope.

*See* Diep Nguyen Affidavit dated July 31, 2013, ¶12.

16. On or about February 9, 2015, in spite of plaintiff's ongoing class

action in the Ninth Circuit Court of Appeals against the SSA, *Diep Nguyen et*

*al. v. SSA*, 14-55514 (9th Cir. 2014) (reviewing class action *Diep Nguyen, et al.*

*v. SSA*, 13-2036 (S.D.Cal. 2004)), defendant SSA dispatched SSA agent Nick

and another agent, SSA Agent-2, whose identity is unknown,  to her home and

proceeded to interrogate her about her relationship with her attorney, and

whether she actually signed the July 31, 2013 affidavit. As a former

Vietnamese refugee who had been persecuted by the Communist government,

which imprisoned her ex-husband and confiscated her property, Ms. Nguyen

was terrified of the SSA agents who reminded her of Communist agents

appearing at her home in Vietnam and taking her husband away in the midst of the night.

17. In spite of the fact that plaintiff Nguyen, like plaintiff Thai, has filed an affidavit in 2013 objecting the SSA's attempt to deprive her of legal representation, *see* Nguyen's July 31, 2013 Affidavit, and thus has an ongoing action pending against SSA in appellate federal court, on or about February 9, 2015, SSA agents-defendants proceeded to interrogate her and violated her privacy at her home without the presence of her attorney, causing her severe apprehension and fear. SSA agents called a Vietnamese interpreter by phone to speak with plaintiff and to record the whole conversation in Vietnamese. After the SSA Agents who conducted the inquisition left, plaintiff suffered a nervous breakdown and immediately contacted her family members to report the SSA's search and to take her to her doctors' offices.

18. On or about February 11, 2015, plaintiff and her son Hong Tran contacted plaintiff's attorney to lodge a complaint against SSA. In particular, plaintiff complained that she has been diagnosed with depression, post-traumatic stress syndrome caused by Communist persecution in Vietnam and years of beatings and abuse by her ex-husband. Immediately thereafter plaintiff developed multiple brain tumors causing severe headache and has been

receiving invasive treatment. SSA's illegal interrogation and searches in February 2015 have caused her to develop brain tumors and severe headaches, mental stress, ongoing anxiety, fear and paranoia necessitating many visits to her psychiatrist and family doctors for treatment. She is still suffering from daily nightmares, post-traumatic stress disorder and flashbacks to the SSA interrogations which have reminded her of Communist persecution in Vietnam and, like plaintiff Anh Thai, is living in fear and dread of SSA's future interrogations. Plaintiff is scheduled for brain tumor surgeries which she attributed to the SSA's interrogations and resulting mental and physical stress, and is asking that this Court enjoin SSA from ever contacting her *ex-parte* without her attorney's presence.

## PLAINTIFF MOHAMMAD NASSIRI

19. Plaintiff Nassiri is a former 67 year old Iranian refugee who has been represented by attorney Alexandra Manbeck since 2010 since he was unable to obtain representation as no one was willing to help him apply for Social Security benefits. Mary Mitchell, a former SSA attorney who practiced Social Security law, testified on April 24, 2013, as follows:

Indeed, I have declined to represent many of Ms. Manbeck's clients on an individual basis due to the fact that I am unable to communicate with them in Vietnamese (Tho Ha, Oanh Vo), **or the fact that there is no possibility of**

**getting paid for my work (Mohamed Nassiri)**. The clients were referred to me by Nguyen Tin Translation Services.

*See* Mary Mitchell April 24, 2013 affidavit, ¶18 (emphasis added). Plaintiff

Nassiri corroborated Ms. Mitchell's testimony as follows:

In September 2011, none of the attorneys, Mary Mitchell, Robert Ochs, Hung Le and Quoc Minh Vuong, Esq., agreed to represent me before the Social Security Administration...In desperation, I asked Christine Nguyen [of Nguyen Tin Translation Services] to find a Social Security attorney for me and through Christine attorney Manbeck agreed to represent me. I am forever grateful for attorney Manbeck to take my case when every other lawyer rejected me.

Nassiri April 1, 2013 Affidavit, ¶4.

   20.  In February 2013, while plaintiff Nassiri was hospitalized for severe

burns on his legs, SSA personnel from the Aerodrive office called him and

ordered him to report to the office to answer questions about his relationship

with his attorney. In response, Nassiri filed an affidavit on April 1, 2013

requesting that SSA cease and desist from harassing him, as follows:

I got burned during an accident in early February and had to spend ten days in the hospital, University of California San Diego Burn Center. While I was in the hospital, the Social Security Administration called me and ordered me to go to their office, in spite of my injuries...**I have stopped taking calls from SSA and directed my attorney Manbeck to seek an injunction and a temporary restraining order against SSA for harassing me** when I was being treated at UCSD and from interfering with my relationship with my attorney Alexandra Manbeck..

Nassiri April 1, 2013 Affidavit, ¶22 (emphasis added). Mr. Nassiri has been

suffering from severe diabetic neuropathy, partial diabetic reticulopathy,

arthritis, depression and onset of paranoia and suffered a nervous breakdown in 2013 after the harassment.

21. In spite of his April 1, 2013 request and his filing of his affidavit in the action *Phan, et al. v. SSA*, 13-cv-2036 (S.D. Cal. 2014), SSA continues to harass him by having personnel of Social Security from the Aero Drive office calling him and threatening him with suspension of benefits unless he answered questions about his privileged relationship with his attorney.

22. On or about January 26, 2015 (or January 19, 2015), SSA Agent Nick from the Social Security office on Aerodrive suddenly arrived to his home with another Social Security employee, SSA Agent-2, in an attempt to find him. After learning that he was not at home, they located him by phone at a San Diego downtown coffee shop and met him there to question him about his attorney-client relationship. Mr. Nassiri declined to answer their questions and promptly contacted his attorney to seek an injunction as this is the second time that the illegal search and interrogation happened, in spite of his prior objections. The illegal search in a public place has embarrassed Mr. Nassiri and caused him severe emotional distress and worsened his mental illness. Mr. Nassiri suffered a nervous breakdown immediately thereafter.

23. On January 30, 2015, Mr. Nassiri filed an affidavit in support of his

motion for a preliminary injunction and for damages. The affidavit states in

relevant part as follows:

I decline to answer any such question because I believe that it is illegal for
Social Security to ask me questions that deal with personal and confidential
information. Please refer to my previous affidavit signed on or about April 1,
2013 complaining about Social Security Administration's harassment of me. In
spite of my complaint, the harassment is continuing.

Social Security's personnel continues to harass me and attempts to obtain
privileged information between me and my attorney. SSA action is illegal and
should immediately stop.

**By this search and harassment Social Security Administration has many
times violated my Fourth Amendment constitutional right to be free from
illegal search.**

Nassiri's January 30, 2015 Affidavit, attached herein (emphasis added). Due to

SSA's bad faith and intentional conduct, plaintiff Nassiri has suffered severe

injuries and damages to his reputation as he was interrogated in a public place

in front of his friends and strangers.

### PLAINTIFF AHMED MOHAMED JEYLANI

24. Plaintiff Jeylani is a 56 year old former Somalian refugee who has

been represented by attorney Alexandra Manbeck since 2011. Plaintiff filed an

affidavit stating that he desperately needed representation at an administrative

hearing and that no one, except his attorney, was willing to represent him. *See*

Jeylani Affidavit dated August 3, 2013. Mr. Jeylani has been suffering severe mental and physical disabilities due to family deaths and trauma in his Somalian past and has specifically requested that he be represented at his upcoming hearing by his attorney.

25. In late January 2015, due to his filing of the 2013 affidavit, SSA Agent Nick and SSA Agent-2 questioned him at length about his affidavit and attempted to have him recant his testimony, causing him severe emotional distress.

## VI - DEFENDANTS' RETALIATION IN BAD FAITH AND THE CAMPAIGN OF TERROR AND INTIMIDATION AGAINST PLAINTIFFS

26. Showing their SSA badge, defendants SSA Agent Nick and Agent-2 ordered all plaintiffs to open the doors of their homes to let them in and respond to their questions, in violation of plaintiff's Fourth amendment rights and Fifth amendment privacy rights, as plaintiffs fearfully believed that defendants were police officers and that they must comply with defendants' order . Defendants wrongfully intimidated plaintiffs under color of federal law and misled plaintiffs.

27. Defendants SSA Agent Nick and Agent-2 have engaged in a pattern of misconduct under color of authority in their position at the Aero Drive SSA

district office. Their *modus operandi* is as follows: while litigation in federal
appellate court and in administrative proceedings are ongoing, they contacted
plaintiffs *ex-parte* at their house such as early morning or late afternoon so that
plaintiffs could not contact their attorney for advice. Then defendants
misrepresented that they had the authority to order them to answer questions
incriminating to them or their counsel without counsel's presence. Since
plaintiffs are refugees with a long history of being persecuted by the
Communist authority in Vietnam, the war lords in Somali or the ayatollahs in
Iran, plaintiffs obviously became intimidated by defendants and  complied with
defendants' order . Then defendants mislead plaintiffs into recanting their prior
written testimonies, and intimidated plaintiffs who fearfully denied that they
had ever signed their 2013 affidavits. Defendants showed plaintiffs documents
they did not understand and misinformed plaintiffs, and implicitly threatened
plaintiffs of the consequences of non-recantation such as the loss of benefits.
As a result, some plaintiffs denied that they ever signed the affidavits.
Defendants illegally used their authority to misrepresent themselves, to order
plaintiffs to provide personal information about plaintiffs' lives in violation of
plaintiffs' privacy rights and constitutional rights. Defendants also misused

their authority to order plaintiffs to reveal their private conversation with plaintiffs' attorney in violation of the attorney-client privilege.

28. Defendants SSA Agent Nick and SSA Agent-2, acting under color of federal law have deprived the named plaintiffs and unnamed or anonymous class plaintiffs of the rights, privileges, or immunities secured to them under the Fourth,  Fifth Amendments to the United States Constitution and the Equal Protection of the law.

29. Defendant SSA, as Supervisor of the Defendants Agent Nick and Agent-2, has maintained and implemented an illegal policy of searching plaintiffs without consent, in order to tamper with evidence and obstruct justice. With respect to the affidavits that plaintiffs filed in 2013, defendant SSA had the option of deposing plaintiffs in the course of prior litigation in district court in the case *Anh Thai, Diep Nguyen, et al. v. SSA*, 13-cv-2036 (S.D.Cal. 2014). Instead of noticing plaintiffs so that they could be represented during the deposition concerning their affidavits, defendant SSA ambushed plaintiffs at their home to extract confessions and recantations of their affidavits without the presence of counsel while plaintiffs have an appeal pending in federal appellate court.

30. Defendant SSA has acted in a bad faith and in a discriminatory manner against plaintiffs, as plaintiffs who had filed affidavits against SSA were singled out for illegal searches and implicit threats of losing benefits whereas other applicants not filing affidavits or not suing SSA were not searched, interrogated, or threatened with losing benefits.

31. As a direct and proximate result of being cornered at her home and threatened concerning her benefit application and her prior 2013 affidavit by defendants, plaintiff Diep Nguyen has developed brain tumors which may necessitate surgeries, and worsening flashbacks, post-traumatic stress disorder and major depressive disorder.

32. As a direct and proximate result of being cornered at her home and questioned about her benefit application and her attorney-client relationship by defendants, plaintiff Anh Thai has developed morbid fear and paranoia, flashbacks and worsening post-traumatic stress disorder and major depressive disorder. Further, plaintiff Anh Thai has been in hiding at some relative's home since the SSA raids in December 2013 and January 2014.

33. As a direct and proximate result of being repeatedly contacted on the UCSD hospital bed in 2013, and cornered in a downtown coffee shop by defendants in January 2015 and questioned about his benefit application and

his prior 2013 affidavit by defendants, plaintiff Mohammad Nassiri has

developed paranoia, obsessive fear of SSA, and worsening post-traumatic

stress disorder and major depressive disorder.

34. As a direct and proximate result of being  questioned about his

benefit application and his attorney-client relationship by defendants, plaintiff

Jeylani has developed worsening post-traumatic stress disorder and major

depressive disorder.

35. Defendants' conduct evinces a pattern of retaliation against plaintiffs

who had previously filed affidavits complaining about SSA. Numerous SSA

employees such as Mary Mitchell, Shelly  Schwartlander and Frances Thomas

described such a culture of retaliation, whereby SSA has been engaging in

retaliation to punish dissension, such as the selective prosecution of plaintiffs'

attorney in retaliation for filing bias complaints against ALJ Godfrey instead of

offering emoluments to the ALJs, as follows:

I believe that the *March 12, 2013 SSA* letter sanctioning Ms. Tran
Manbeck was in retaliation for Ms. Manbeck's filing of the *AlZayadi, Nora
Donate* action raising issues of ALJ bias concerning ALJ Godfrey.

Attorneys who either wine and dine the ALJs, or pay for and/or play
golf with the ALJs - such as Matty Sandoval - or who would not challenge the
ALJs at administrative hearings or in district court - such as **John Martin in
Tho Ha's case,** Kim Newbrough in Oanh Vo's case - were never prosecuted by
the SSA or suspended, even though the full SSA management and the

Commissioner have been fully aware of the wining and dining practice since at least July 2009.

Mitchell Affidavit ¶15-16.

    36. Ms. Mitchell's 2013 testimony is corroborated by former SSA legal

assistant Shelly Schwartlander's 2014 testimony, as follows:

10. In particular, ODAR has been engaged in retaliation against attorney Alexandra Manbeck who has been challenging the SSA practice since the early 2000's. ALJ New spoke contemptuously of attorney Manbeck, and I was personally instructed by the Office of the General Counsel (OGC) and their lawyers to not talk to Ms. Manbeck in a past period when I believe litigation existed or might have been considered...

11... **I am now aware of management at ODAR (supported in full by the SSA Commissioner) who have an alarming propensity to tell wildly false things under penalty of perjury with no qualms in doing so, just to retaliate against me and silence me.**

*See* Schwartlander Affidavit, ¶10-11 (emphasis added).

    37. In 2008, another SSA employee, Frances Thomas, testified at a

deposition that "people would be extremely reluctant to talk [about SSA] for

fear of retaliation against management." See Exhibit B, attached herein. Just as

with its own employees who became whistle blowers, SSA has been retaliating

against plaintiffs who filed affidavits against it, and acting under color of

federal law, has waged a campaign of terror and intimidation against plaintiffs.

See Exhibit A.

## VII- INJURIES TO THE VIETNAMESE, SUDANESE AND IRANIAN IMMIGRANT COMMUNITIES

38. As explained above, the legal and orthodox procedure for disputing or discrediting plaintiffs' affidavits was to seek a deposition pursuant to notice or to a subpoena. In this case, defendants never sought a deposition and instead conducted a *sub rosa* raid on plaintiffs' home, hospital bed or public setting to tamper with evidence.

39. By securing some plaintiffs' recantation based on defendants' false statements, misrepresentations and threats of denying or withholding benefits; conducting searches without probable cause while litigation is pending, defendants have created fear and apprehension throughout the immigrant community, and preventing many fearful immigrants from applying for benefits. Thus defendants directly and proximately caused plaintiffs' injuries, including the loss or potential loss of benefits due to fear of applying and being subject to interrogations and house visits by SSA agents or SSA police.

40. The widespread damage caused by defendants' campaign of terror and intimidation is described by the President of the Association of Vietnamese veterans in San Diego ("Association"):

3- The SSA armed police has appeared unannounced at members' homes and asked questions about the members's relationship with Ms. Manbeck, including

whether she had promised to obtain benefits for them and whether she has demanded upfront money payments, among other things.

4- The armed visits of SSA police personnel have spread fear and terror among the Vietnamese community as the visits remind the Vietnamese of Communist persecution in Vietnam, with Communist agents appearing at people's home in the middle of the night and taking them away.

Trai Chau's May 31, 2014 Affidavit, ¶¶ 3, 4.

41. Another Vietnamese free-lance interpreter, Lanh Nguyen, testified in

relevant part as follows:

I was informed by numerous Vietnamese refugee applicants that since the beginning of 2014 they have been the subject of unannounced visits by Social Security personnel wearing police uniforms with badges and carrying guns at their hips.
The SSA police has spread terror and fear among the Vietnamese community. In particular I am familiar with the cases of Anh Thai, Don Doan and Tommy Nguyen.
...
I have relayed the applicants' fear and terror to the attorney for Don Doan and Tommy Nguyen, Ms. Alexandra Manbeck. I do know of an ongoing policy of the SSA to investigate and search Vietnamese applicants for benefits, and the terror inflicted upon the Vietnamese community which had been traumatized by Communist persecution and dreaded gun-bearing authorities reminding them of Communist rule.

Lanh Nguyen's Affidavit, ¶¶3-5. Although defendants were notified since mid-

2014 of Lanh Nguyen's and Trai Chau's affidavits in the course of plaintiffs'

litigation, defendants continue to wage a campaign of terror and intimidation

against plaintiffs, and under color of federal law, willfully and intentionally

violate the plaintiffs' Due Process rights and Fourth Amendment rights.

## _____VIII- CAUSE OF ACTION
### First Cause of Action
(Misrepresentation, Fourth Amendment)

42.  Plaintiffs incorporate by reference paragraphs one through 41, above.

43.  Defendants SSA Agent Nick and SSA Agent-2's misrepresentation that they had the authority to order plaintiffs to "confess" is a misuse of the office of the SSA and constitutes a violation of plaintiffs' Fourth and Fifth Amendment Property rights to the United States Constitution, all in violation of the Equal Protection Clause of the United States Constitution.

44. In addition to violating plaintiffs' Fourth Amendment rights by engaging in a search while litigation is pending, and absent probable cause, defendants also violated plaintiffs' Fourth Amendment right to be free from an unreasonable search based on the public manner of the search upon plaintiffs' home or, in the case of plaintiff Nassiri, interrogating him in a public place and causing him severe embarrassment.

45. In sending SSA Agent Nick and SSA Agent-2 to plaintiffs' home, in spite of conducting ongoing litigation against plaintiffs in the Court of Appeals

for the Ninth Circuit,  the Supervisor SSA defendant willfully and in bad faith

violated the plaintiffs' Fourth Amendment rights.

<u>                                        </u>**Second Cause of Action**
(Due Process- Fifth Amendment)

46.  Plaintiffs incorporate by reference paragraphs one through 45,

above.

47.   SSA Agent Nick and SSA Agent-2 's ex-parte communications with

and interviews of plaintiffs without counsel or representatives in determining

plaintiffs' eligibility for benefits violated plaintiffs' due process rights as

guaranteed by the Fifth Amendment to the United States Constitution. The

plaintiffs have a due process claim as SSA Agent Nick and SSA Agent-2,

under the supervision of defendant SSA, were personally involved in depriving

the plaintiffs of their due process rights.

<u>                                        </u>**Third Cause of Action**
( Equal Protection)
48.  Plaintiffs incorporate by reference paragraphs one through 47,

above.

49. By selectively searching plaintiffs while not conducting similar

searches of claimants who did not file complaints against SSA,  defendants

have discriminated against plaintiffs. Furthermore,  the SSA's explicit approval

of these actions by not stopping them or implementing regulations to adequately deal with them is just as arbitrary and unreasonable, given that SSA has been sued by plaintiffs since 2013 and that SSA is participating in the appellate review process. Thus SSA Commissioner has violated plaintiffs' right to due process and right to equal protection by implementing an illegal policy of searching and interrogating plaintiffs without consent, and of discriminating against plaintiffs on the basis of their participating in a class action against SSA.

**Fourth Cause of Action**
Breach of Ethical Duties

50.  Plaintiffs incorporate by reference paragraphs one through 49, above.

51.  Defendants have breached their ethical duties toward claimants in violation of the Social Security Act and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

**Fifth Cause of Action**
Interference with Contractual Relationship
And Violation of the Attorney-Client Privilege

52.  Plaintiffs incorporate by reference paragraphs one through 51, above.

53. In ex-parte contact with the plaintiffs defendants falsely advised them that they no longer needed representations and ordered the plaintiffs to reveal privileged conversation. In so doing defendants misused their governmental authority to infringe on plaintiffs' constitutionally protected right to privacy and interfered with plaintiffs' contractual relationship with their attorneys. By stating to plaintiffs that they could speak without counsel present, defendants violated the plaintiffs' right to adequate representation and the attorney-client's privilege as they was well aware that they should not question plaintiffs without counsel.

_____**Sixth Cause of Action**
SSA's Ultra Vires Misconduct

54.  Plaintiffs incorporate by reference  paragraphs one through 53, above.

55. Defendants' actions are *ultra vires* and unconstitutional. Under color of authority and federal law defendants have caused fear and apprehension in the community of Vietnamese, Somalian and Middle Eastern immigrants that they contacted *ex-parte*. Defendant SSA is the Supervisor of SSA Agent Nick and SSA Agent-2's actions and directly approved them. Defendants Agent Nick and Agent-2, under order from the SSA defendant refused to contact plaintiffs' attorney prior to the raids and instead conducted the raids upon plaintiffs' home

or public place instead of using a subpoena or seeking a lawful deposition, keeping plaintiffs' attorney *incommunicado*.  Accordingly, defendant SSA Commissioner has waived her sovereign immunity for acts by its agents which SSA willfully and in bad faith ordered its agents to execute.

**Seventh Cause of Action**
**Intentional Infliction of Emotional Distress and Physical Abuse**

56.  Plaintiffs incorporate by reference  paragraphs one through 55, above.

57. Although all plaintiffs had previously filed affidavits in 2013 requesting that SSA not interfere with their attorney-client relationship and stop harassing them, SSA and its agents willfully and intentionally caused plaintiffs severe and disabling emotional distress and worsening physical distress, such as the development of catastrophic brain tumors in the case of plaintiff Diep Nguyen. Thus, SSA defendants' decision to conduct sudden raids at plaintiffs' home or public place rather than use a subpoena or a notice of deposition was wanton, willful and unjustified by any urgency necessitating such illegal tactic.

## PRAYER FOR RELIEF

Plaintiffs have no adequate or speedy remedy at law for the above-mentioned conduct of defendant, and this action for injunctive relief and declaratory judgment is plaintiffs' only means for securing relief.

WHEREFORE, Plaintiffs pray that this Court:

1. Assume jurisdiction over this case.

2. Certify the class of plaintiffs as encompassing all Vietnamese, Somalian, Iraqi and Iranian immigrants claimants for Title II and/or Title XIV Supplemental Security Income (SSI) benefits who have been or will be searched by defendant SSA Commissioner and SSA agents since 2013 without warrant, and who are, have been or will be represented by plaintiffs' attorney Alexandra T. Manbeck.

3. Issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, ordering defendant SSA and its agents to refrain immediately from contacting plaintiffs by any means, whether in person, phone or mail,  pending the final hearing and determination of this action, and in particular, enjoining SSA or any of its agents or employees from ex-parte communication with plaintiffs and intimidating plaintiffs without warrant.

4. Issue a declaration that the SSA's policy of searching plaintiffs without consent is illegal and unconstitutional and violates plaintiffs' Fourth Amendment, Fifth Amendment and the Equal Protection of the law.

5. Issue a permanent injunction perpetually enjoining and restraining defendants from engaging in the conduct complained of herein.

6. Declare that defendants have committed misconduct under color of authority and federal law, violated plaintiffs' rights under the Fourth and Fifth Amendments and violated plaintiffs' attorney-client privilege.

7. Award plaintiffs compensatory damages against the defendants, jointly and severally, in an amount to be determined at a jury trial.

8. Award plaintiffs punitive damages against the defendants, jointly and severally, in an amount to be determined at a jury trial.

9. For pre-judgment and post-judgment interest and recovery of costs;

10. Award plaintiffs reasonable attorney's fees pursuant to 28 U.S.C. § 2412 and the costs and fees of this action pursuant to 28 U.S.C. § 2412 and Rule 54(d) of the Federal Rules of Civil Procedure, and

11. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
S/ Alexandra T. Manbeck

DATED: March 13, 2015

_____
Alexandra T. Manbeck
Quan M. Chau
Attorneys for Plaintiffs