UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mohammad Nassiri, Diep Thi Nugyen, Anh Van Thai, Duc Huynh, and Hoi Cuu Quan Nhan VNCH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Duke (Duc) Tran, Mary Hagar, Nicholas Pilcher, Sundeep Patel, and SSA-Agent Does 1-20,<br><br>Defendants. | Case No.: 15-cv-0583-WQH-NLS<br><br>**ORDER** |

The matters before the Court are the Order to Show Cause (ECF No. 126) and two Motions for Reconsideration filed by Plaintiffs (ECF Nos. 127 and 133).

**I. Background**

On March 14, 2015, Plaintiffs initiated this action by filing a Class Action Complaint (ECF No. 1). On December 27, 2015, Plaintiffs filed a Second Amended Class Action Complaint (the "SAC"). (ECF No. 63). On August 18, 2016, the Court issued an order dismissing all claims in the SAC except for the sixth [Equal Protection], eleventh [First Amendment], and thirteenth [Fourth and Fourteenth Amendment] causes of action filed by

Plaintiffs Anh Van Thai, Diep Thi Nguyen, Duc Huynh, Trai Chau, and Hoi Cuu Quan Nhan VHCH. (ECF No. 79). The Court also dismissed all claims for damages against Defendant Carolyn Colvin in her official capacity as Commissioner of Social Security. (ECF No. 79 at 17).

On October 21, 2016, Plaintiffs filed a Motion for Leave to File a Third Amended Complaint (ECF No. 92). On December 21, 2016, the Court issued an order granting in part the Motion for Leave to File a Third Amended Complaint. (ECF No. 100). The Court ordered that "Plaintiffs may file a Third Amended Complaint, naming only the remaining Defendants Carolyn Colvin, Nicholas Pilcher, Sundeep Patel, William Villasenor, Dulce Sanchez, Duke Tran and Mary Hagar – and only including the sixth [Equal Protection], eleventh [First Amendment], and thirteenth [Fourth and Fourteenth Amendment] causes of action alleged in Plaintiffs' Proposed Third Amended Complaint." *Id.* at 6-7.

On January 10, 2017, Plaintiffs filed the Third Amended Complaint (the "TAC") (ECF No. 101). The TAC named seven defendants: Carolyn Colvin,[1] Mary Hagar, Duke Tran, Nicholas Pilcher, Sundeep Patel, William Villasenor, and Dulce Sanchez. *Id.* The TAC alleges that interrogations conducted by Defendants Pilcher, Patel, Villasenor, and Sanchez relating to an SSA investigation concerning Plaintiffs' attorney Alexandra Manbeck (the "Searches") violated the Plaintiffs' rights under the First Amendment, Fourth Amendment, and the Equal Protection Clause. *Id.*

On January 24, 2017, Defendant Berryhill filed a Motion to Dismiss all claims against her as moot. (ECF No. 104). On July 19, 2017, the Court issued an Order granting Berryhill's Motion to Dismiss (the "Berryhill Order") (ECF No. 125). The Court stated that "Plaintiffs' claim for monetary relief against Defendant Berryhill remain dismissed" and that Plaintiffs' claims against Berryhill are "limited to claims for injunctive relief." *Id.*

---

[1] Nancy Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill has been automatically substituted for Carolyn Colvin as her successor as Acting Commissioner of Social Security.

at 5. The Court stated that "[e]ach of the remaining claims against Defendant Berryhill concern injunctive relief relating to [the Searches]." *Id.* The Court found that Berryhill had submitted evidence showing that the SSA had ceased investigating Manbeck. *Id.* at 6-8. The Court concluded that, based on this evidence, Plaintiffs' claims against Berryhill for injunctive relief no longer presented "a present controversy as to which effective relief c[ould] be granted" and dismissed those claims as moot. *Id.* at 8 (quoting *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008)).

On March 15, 2017, Defendants Villasenor and Sanchez moved to dismiss all claims against them in the TAC. (ECF No. 114). On August 8, 2017, the Court issued an Order granting the Motion to Dismiss filed by Villasenor and Sanchez on the grounds that "the TAC does not allege sufficient facts to support the allegations that Defendants Villasenor and Sanchez acted under color of state law" (the "Villasenor and Sanchez Order"). (ECF No. 126 at 6). The Court then proceeded "to order Plaintiffs to show cause whether the remaining Defendants can be sued for damages under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) in light of *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)." *Id.* at 7. At this point in the litigation, the only claims remaining are Plaintiffs claims for damages against Defendants Hagar, Tran, Pilcher, and Patel.

## II. Motion to Reconsider the Berryhill Order

On August 14, 2017, Plaintiffs filed a Motion for Reconsideration of the Berryhill Order. (ECF No. 127). Defendants filed a Response on September 1, 2017. (ECF No. 132). Plaintiffs filed a Reply to Defendants' Response on September 16, 2017. (ECF No. 137).

Plaintiffs assert that a decision issued by the SSA on July 19, 2017 denying Plaintiff Thai benefits (the "SSA Decision") supports reconsideration. (ECF No. 127-1).[2] Plaintiffs contend that the "SSA Decision demonstrates that Plaintiffs' claims for relief are not moot"

---

[2] The Court grants Plaintiff's unopposed Request for Judicial Notice of the SSA Decision (ECF No. 127-2).

3

because it shows that Plaintiffs "remain subject to the SSA's searches and the adverse use of the fruits of the searches." *Id.* at 12, 16. Plaintiffs contend that they "are seeking the Court's injunction not only of illegal searches but, as a corollary, all the fruits of the searches." (ECF No. 137 at 4). Defendants contend that Plaintiffs claims for injunctive relief remain moot because "Plaintiffs do not assert that the conduct complained of in the TAC . . . (*i.e.*, the [Searches]) is ongoing" and this Court lacks jurisdiction to hear claims concerning the denial of Thai's requested benefits. (ECF No. 132 at 8-14).

"Reconsideration is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 880 (9th Cir. 2009) (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). Reconsideration of an order

> on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence [is] of 'such magnitude that production of it earlier would have been likely to change the disposition of the case.'

*Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.,* 833 F.2d 208, 211 (9th Cir. 1987).

The Court concludes that the SSA Decision does not provide any basis for reconsidering the Court's order denying as moot Plaintiff's request for an injunction against future searches and interrogations. *See* ECF No. 125 at 6-8 (concluding that Plaintiffs' claims for injunctive relief no longer presented "a present controversy as to

which effective relief c[ould] be granted" because the SSA had ceased investigating Manbeck). The SSA Decision is not evidence that Defendants intend to search or interrogate Plaintiffs in the future. To the extent that Plaintiffs request an injunction preventing the SSA from considering evidence obtained during the Searches when making benefits determinations,[3] the Court does not have jurisdiction over that request. *See* ECF No. 125 at 7-8 (explaining that 42 U.S.C. §§ 405(g) and 405(h) prevent district courts from reviewing SSA benefits decisions except upon the filing of a civil action commenced within sixty days of the mailing of a notice of the decision at issue). The Motion for Reconsideration of the Berryhill Order is denied.

### III. Motion to Reconsider the Villasenor and Sanchez Order

On September 6, 2017, Plaintiffs filed a Motion for Reconsideration of the Villasenor and Sanchez Order. (ECF No. 127). Defendants filed a Response on October 2, 2017. (ECF No. 139). Plaintiffs filed a Reply to Defendants' Response on October 11, 2017. (ECF No. 141).

Plaintiffs assert that the SSA Decision supports reconsideration of the Villasenor and Sanchez Order. (ECF No. 133-1). Defendants contend that the SSA Decision does not qualify as new evidence with respect to the Villasenor and Sanchez Order because Plaintiffs were aware of the SSA Decision sixteen days before the Court issued the Villasenor and Sanchez Order. (ECF No. 139 at 3).

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). Reconsideration of an order

---

[3] Plaintiffs "pray that this Court [i]ssue a permanent injunction perpetually enjoining and restraining defendants from engaging in the conduct complained of herein." (TAC at 36).

> on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence [is] of 'such magnitude that production of it earlier would have been likely to change the disposition of the case.'

*Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.,* 833 F.2d 208, 211 (9th Cir. 1987).

The SSA Decision does not qualify as newly discovered evidence with respect to the Villasenor and Sanchez Order because Plaintiffs were aware of the SSA Decision sixteen days before the Court issued the Villasenor and Sanchez Order. *See Feature Realty*, 331 F.3d at 1093 (holding that information received eight days before the district court issued an order was not "newly discovered" with respect to that order). The Court concludes that the SSA Decision does not justify reconsideration of the Villasenor and Sanchez Order.

**IV. Order to Show Cause**

On August 8, 2017, the Court "order[ed] Plaintiffs to show cause whether the remaining Defendants can be sued for damages under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) in light of *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)." (ECF No. 126 at 7). On September 11, 2017, the Plaintiffs filed a Response to the Court's Order to Show Cause. (ECF No. 134). On September 25, 2017, Defendants filed a Response to the Court's Order to Show Cause. (ECF No. 138). On October 3, 2017, Plaintiffs' filed a Reply to Defendant's Response. (ECF No. 140).

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court approved of an implied remedy for damages against a federal actor for the violation of a constitutional right. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (citing *Bivens*, 403 U.S. at 397). In *Abassi*, the Supreme Court stated that reviewing a claim seeking an implied damages remedy for a violation of a constitutional right, i.e. a *Bivens* claim, involves two distinct inquiries. First, the reviewing

court must decide whether the *Bivens* claim present a "new context." *Id.* at 1860. "[A] Bivens remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)).

### A. Allegations

The TAC contains allegations discussing four particular interactions between SSA Agents and individual Plaintiffs. Three of these alleged interactions involved SSA Agents coming to an individual Plaintiffs' homes and questioning those Plaintiffs. *See* ECF No. 101 at ¶ 27-28, 34-36, 54-56. The TAC alleges that the SSA Agents entered those Plaintiffs' homes without their consent. *Id.* The TAC alleges that the SSA Agents questioned those Plaintiffs' about their medical conditions and their relationships with their attorney. *See id.* The TAC alleges that the SSA Agents questioned those Plaintiffs in an aggressive and hostile manner. *Id.*

The fourth interaction between SSA Agents and a Plaintiff discussed in detail in the TAC involved SSA Agents Pilcher and Patel and Plaintiff Mohammad Nassiri. The TAC alleges that Pilcher and Patel attempted to contact Nassiri at his home then, "[a]fter learning that he was not at home, [] located him by phone . . . and ordered him to meet them at a near-by coffee shop." *Id.* at ¶ 44. Pilcher and Patel then allegedly aggressively interrogated Nassiri about his medical conditions and his relationship with his attorney. *Id.* at ¶¶ 45-48.

### B. New Context

Plaintiff contends that "[t]he context here is not new because *Bivens* itself involved a claim under the Fourth Amendment for federal officers' unreasonable search and seizure." (ECF No. 134 at 9). Defendants contend that

> Plaintiffs' claims do not resemble the three prior Bivens claims previously approved by the Supreme Court and thus seek to expand Bivens to a new context. . . . Plaintiffs here are not challenging 'standard law enforcement operations,' but significant elements of the Social Security program involving (1) when and how the Agency can obtain information to determine eligibility for benefits, and (2) whether and how to regulate and investigate representatives appearing before the Agency. This is a much different

7

> statutory and regulatory framework than that at issue in Bivens itself (which did not implicate the administration of a massive and complex benefits program), and in the only two other cases . . . in which the Supreme Court has authorized an implied damages remedy against federal officials.

(ECF No. 138 at 15-16).

The Court of Appeals in *Abbasi* determined whether the case presented a new *Bivens* context by asking "whether the asserted constitutional right was at issue in a previous *Bivens* case" and "whether the mechanism of injury was the same mechanism of injury in a previous *Bivens* case." 137 S. Ct. at 1859 (quoting *Turkmen v. Hasty*, 789 F.3d 218, 234 (2d Cir. 2015). The Supreme Court explicitly rejected this approach as inconsistent with prior Supreme Court decisions. *Id.* (referencing *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) and *Chappell v. Wallace*, 462 U.S. 296 (1983)). The Supreme Court stated that "[t]he proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." 137 S. Ct. at 1859. Consequently, determining whether a *Bivens* claim present a new *Bivens* context requires an understanding of the three previous Supreme Court cases that allowed a *Bivens* claim to proceed: *Bivens*; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980).

In *Bivens*, the plaintiff's

> complaint alleged that . . . agents of the Federal Bureau of Narcotics acting under claim of federal authority, entered his apartment and arrested him for alleged narcotics violations. The agents manacled petitioner in front of his wife and children, and threatened to arrest the entire family. They searched the apartment from stem to stern. Thereafter, petitioner was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search.

403 U.S. at 389. The plaintiff sought damages for violations of his rights under the Fourth Amendment. *Id.* The Supreme Court stated, "Having concluded that petitioner's complaint

8

states a cause of action under the Fourth Amendment, we hold that petitioner is entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment." *Id.* at 397 (internal citation omitted).

In *Davis v. Passman*, 442 U.S. 228 (1979), the Court ruled that the Fifth Amendment's Due Process Clause provided the plaintiff with a monetary remedy for gender discrimination against a Congressman for firing her because she was a woman. In *Carlson v. Green*, 446 U.S. 14 (1980), the Court ruled that the Eighth Amendment's Cruel and Unusual Punishment Clause gave the plaintiff a cause of action for damages against federal prison officials for failing to treat the plaintiff's asthma.

In *Abbasi*, the Supreme Court provided a non-exhaustive list of examples of ways in which a *Bivens* case could be different from *Bivens*, *Davis*, and *Carlson*, "that are meaningful enough to make a given context a new one." 137 S. Ct. at 1859-60.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

The Supreme Court stated that a case "might" be "meaningful[ly]" different from *Bivens*, *Davis*, and *Carlson* "because of . . . the statutory or other legal mandate under which the officer was operating." *Id.* This Court concludes that a case is meaningfully different from *Bivens*, *Davis*, and *Carlson* when the defendant officer was acting pursuant to a program that is extensively regulated by Congress. This Court finds that *Bivens* cases implicating highly-regulated government programs are meaningfully different from *Bivens*, *Davis*, and *Carlson*, which did not involve such a program, because the Supreme Court has explicitly identified extensive congressional regulation of the program under

9

15-cv-0583-WQH-NLS

which the defendant was acting as a factor that is relevant to the availability of a *Bivens* claim. *See id.* at 1858 "Sometimes there will be doubt [about the availability of a *Bivens* remedy] because the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere.").

In this case, Plaintiffs challenge searches conducted by SSA personnel. Congress has extensively regulated the administration of the Social Security program. Consequently, this case presents a new *Bivens* context.

### C. Special Factors

#### 1. Contentions of the Parties

Plaintiffs contend that "[t]here are no special factors . . . counseling against applying *Bivens* to federal agents who unreasonably searched plaintiffs." (ECF No. 134 at 16. Plaintiffs contend that their case is more like *Bivens* than *Abbasi* on the grounds that it does not "call[] into question the formulation and implementation of a general policy" just "searches and seizures by low level [officials]." *Id.* (quoting *Abbasi*, 137 S. Ct. at 1860. Plaintiffs contend that "there is no indication whatsoever that Congress decided not to legislate in the particular area of unreasonable searches and seizures in the Social Security context." *Id.* Plaintiffs contend that "there is no alternative remedy available in this case . . . it is damages or nothing." *Id.* (quoting *Abbasi*, 137 S. Ct. at 1862). Plaintiffs do not discuss whether special factors way against allowing Plaintiffs to collect damages for their First Amendment and equal protection claims.

Defendants contend that Plaintiffs claims "implicate[] one of the nation's largest and most complex legislative and regulatory schemes, the Social Security program." (ECF No. 138 at 17). Defendants contend that "[a]s part of this legislative and regulatory scheme, claimants have significant administrative and judicial remedies available to challenge Agency action that results in the denial of benefits." *Id.* Defendants contend that implying a damages remedy for Plaintiffs claims could have a significant impact on the SSA's ability to "gather information to determine eligibility for SSA benefits" and "investigate

10

representatives appearing before the Agency." *Id.* at 20. Defendants contend that, for these reasons, "the Judiciary is not 'well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 21 (quoting *Abassi*, 137 S. Ct. at 1858).

## 2. Applicable Law

### a. *Abbasi*

"The Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abassi*, 137 S. Ct. at 1857 (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). In *Abbasi*, the Supreme Court explained "special factors counselling hesitation" by discussing the considerations involved in implying a damages remedy for a constitutional violation. "When a party seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis. The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 390 (1983)). The Supreme Court concluded that "[t]he answer most often will be Congress." *Id.* The Supreme Court stressed that "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Id.* at 1856; *see also id.* at 1858 ("It is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others.").

The Supreme Court explained that recognizing damage remedies for constitutional violations is generally not a judicial function because "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide . . . includ[ing] the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself." *Id.* at 1858. Congress, not

the courts, should decide whether to recognize a damages remedy because doing so "involves a host of considerations that must be weighed and appraised." *Id.* at 1857 (quoting *Bush*, 462 U.S. at 390). The Supreme Court explained that "the Legislature is in the better position to consider if 'the public interest would be served' by imposing a 'new substantive legal liability.'" *Id.* (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 426–427 (1988)). "Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government." *Id.* at 1856.

Based on this reasoning, the Supreme Court concluded that a "special factor counseling hesitation" is one which would "cause a court to hesitate" before concluding that "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858. A putative *Bivens* claim must be dismissed if it implicates any such "special factors." *Id.* at 1857 ("[A] *Bivens* remedy will not be available if there are 'special factors counselling hesitation.'" (quoting *Carlson*, 446 U.S. at 18 (1980)).

> In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

*Id.* at 1858.

In addition to defining what constitutes a special factor, the *Abbasi* Court identified a few examples. According to the Court, courts should hesitate to imply a damages remedy when "the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." *Id.* at 1858. Courts should also hesitate to imply a damages remedy when the putative *Bivens* claim "challenge[s] more than standard 'law enforcement operations.'" *Id.* at 1861 (quoting *United States v. Verdugo–Urquidez*, 494 U.S. 259, 273 (1990)).

The Supreme Court also identified the existence of alternative remedies as "of central importance." *Id.* at 1862 ("It is of central importance, too, that this is not a case like *Bivens* or *Davis* in which 'it is damages or nothing.'" (quoting *Bivens*, 403 U.S. at 410 (Harlan, J. concurring))).

> If there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action. For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'

*Id.* at 1858 (alterations in original) (quoting *Wilkie*, 551 U.S. at 550). One the other hand, "if equitable [and other existing] remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations." *Id.* The Supreme Court noted that "individual instances of discrimination or law enforcement overreach . . . are difficult to address except by way of damages actions after the fact." *Id.* at 1862.

The Supreme Court emphasized that its opinion in *Abbasi*

> is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose. *Bivens* does vindicate the Constitution by allowing some redress for injuries, and it provides instruction and guidance to federal law enforcement officers going forward. The settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere.

*Id.* at 1856-57.

### b. *Schweiker*

*Schweiker v. Chilicky*, 487 U.S. 412 (1988), is the only Supreme Court decision addressing a putative *Bivens* claim implicating the SSA. *Schweiker* involved the SSA's "continuing disability review" (CDR) program. *Id.* Under the CDR program, "most disability determinations [must] be reviewed at least once every three years." *Id.* at 415 (citing 42 U.S.C. § 421(i)). The CDR program began in 1981. *Id.* When the program

13

began, "[t]he appropriate state agency perform[ed] the initial review, . . . benefits were usually terminated after a state agency found a claimant ineligible, and [benefits] were not available during administrative appeals." *Id.*

> Finding that benefits were too often being improperly terminated by state agencies, only to be reinstated by a federal administrative law judge (ALJ), Congress enacted temporary emergency legislation in 1983. This law provided for the continuation of benefits, pending review by an ALJ, after a state agency determined that an individual was no longer disabled.

*Id.* (citing Pub.L. 97–455, § 2, Pub.L. 98–118, § 2).

The plaintiffs in *Schweiker* were three individuals who had their disability benefits terminated pursuant to the CDR program in 1981 and 1982 only to have their disability status restored retroactive to the dates that their benefits were denied. *Id.* at 417. Plaintiffs sought "money damages for emotional distress and for loss of food, shelter and other necessities proximately caused by [their] denial of benefits without due process." *Id.* at 419 (quotation omitted).

The Supreme Court began its analysis of Plaintiffs' *Bivens* claim with the proposition that

> the concept of 'special factors counselling hesitation in the absence of affirmative action by Congress' has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.

*Id.* at 423.

The Supreme Court stated that

> [t]he administrative structure and procedures of the Social Security system, which affects virtually every American, are of a size and extent difficult to comprehend. Millions of claims are filed every year under the Act's disability benefits programs alone, and these claims are handled under an unusually protective multi-step process for the review and adjudication of disputed

claims.

*Id.* at 424 (quotations and alterations omitted).

The Supreme Court proceeded to perform a special factors analysis, noting the existence of factors that weighed both for and against providing a *Bivens* remedy:

> Congress has failed to provide for 'complete relief': respondents have not been given a remedy in damages for emotional distress or for other hardships suffered because of delays in their receipt of Social Security benefits. The creation of a *Bivens* remedy would obviously offer the prospect of relief for injuries that must now go unredressed. Congress, however, has not failed to provide meaningful safeguards or remedies for the rights of persons situated as respondents were. Indeed, the system for protecting their rights is, if anything, considerably more elaborate than the civil service system considered in *Bush* [*v. Lucas*, 462 U.S. 367, 390 (1983)]. The prospect of personal liability for official acts, moreover, would undoubtedly lead to new difficulties and expense in recruiting administrators for the programs Congress has established.

*Id.* at 425.

The Supreme Court concluded that separation of powers principles required that Congress, not the courts, balance these factors. *Id.* at 429 ("Congress is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program."). The Supreme Court stated that, in light of the 1983 law and subsequent statutes addressing the CDR program, "Congress has discharged that responsibility to the extent that it affects the case before us, and we see no legal basis that would allow us to revise its decision. *Id.*

### 3. Analysis

In this case, the Court undertakes its analysis of Plaintiffs' putative *Bivens* claim mindful of the fact that "expanding the Bivens remedy is now considered a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857. The Court is also mindful of the Supreme Court's recent admonitions that "[i]t is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims,"

15

and that "the Legislature is in the better position to consider if 'the public interest would be served' by imposing a 'new substantive legal liability.'" *Id*. at 1857-58, (quoting *Schweiker*, 487 U.S. at 427). In the thirty-five years since the Supreme Court implied a damages remedy for a constitutional violation, "the arguments for recognizing implied causes of action for damages [have] beg[u]n to lose their force" and "the [Supreme] Court [has] adopted a far more cautious course before finding implied causes of action." *Id*. at 1855.

Plaintiffs claims are based on interrogations conducted by SSA agents concerning Plaintiffs' medical conditions and relationships with their attorney. (ECF No. 101 at ¶¶ 86-93). As the Supreme Court noted in *Schweiker*, Congress has established "administrative structure and procedures [for] the Social Security system[] which . . . are of a size and extent difficult to comprehend." 487 U.S. at 423. In *Abbasi*, the Supreme Court stated that a "special factor" counselling hesitation is present when a "case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." 137 S. Ct. at 1858. The Supreme Court in *Schweiker* discussed multiple reasons reason that courts should hesitate to allowing *Bivens* claims against SSA personnel. One is that "Congress is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program." *Id*. at 429. Another, more practical reason is that "[t]he prospect of personal liability for official acts . . . would undoubtedly lead to new difficulties and expense in recruiting administrators for [SSA] programs." *Schweiker*, 487 U.S. at 425.

"The creation of a *Bivens* remedy would obviously offer the prospect of relief for injuries that [otherwise would] go unredressed," but would also have practical consequences on the administration of the SSA program. *Id*. at 425; *see also Abbasi*, 137 S. Ct. at 1856 ("Claims against federal officials often create substantial [monetary] costs, in the form of defense and indemnification . . . [and] administrative costs attendant upon intrusions resulting from the discovery and trial process."). In *Abbasi*, the Supreme Court

made it clear that, when deciding whether a damages remedy is available entails balancing competing factors, "[t]h[at] balance is one for the Congress, not the Judiciary, to undertake." 137 S. Ct. at 1863.

The possible practical consequences on the Social Security program of a decision allowing an implied damages remedy against SSA agents is a "special factor" that "cause[s] this] court to hesitate" before concluding that "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing [it]to proceed." *Id.* at 1858. In light of the practical consequences, and the extensive congressional and administrative oversight of the Social Security program, "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting [the] wrong[s alleged by Plaintiffs]." *Id.* Consequently, under *Abbasi*, the Court "must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Id.*; *see also id.* at 1857 ("[A] *Bivens* remedy will not be available if there are 'special factors counselling hesitation.'" (quoting *Carlson*, 446 U.S. at 18 (1980)).

The Court acknowledges that there are a number of factors that support granting a *Bivens* remedy here. Most importantly, this is a case where Plaintiffs are without any alternative monetary remedies. *See id.* at 1862 (stating that the existence of alternative remedies "is of central importance" to the special factors analysis). In *Schweiker*, plaintiffs sought money damages that were "proximately caused by [their] denial of benefits." 487 U.S. at 419. The Supreme Court concluded that Congress had provided a remedy for injuries caused by denials of benefits (retroactive restoration of benefits) and a procedure for obtaining that remedy. *Id.* at 425 ("Congress, however, has not failed to provide meaningful safeguards or remedies for the rights of persons situated as respondents were."). On the other hand, Congress has not provided a remedy for injuries caused by interrogations executed by SSA agents. While the absence of alternative remedies weighs in favor of allowing Plaintiffs' *Bivens* claims to proceed, it does not require that the Court

do so. *See Abbasi*, 137 S. Ct. at 1858 (stating that, if other available remedies "prove insufficient, a damages remedy *might* be necessary to redress past harm and deter future violations." (emphasis added)).

Another factor that weighs in favor of allows Plaintiff's Fourth Amendment claim for damages to proceed is the similarities between that claim and the one brought in *Bivens* itself. Both claims are brought under the Fourth Amendment and challenge searches and seizures executed by federal officers. (ECF No. 101 at ¶ 93); *Bivens*, 403 U.S. at 389.

The Supreme Court in *Abbasi* clearly stated that its opinion "[wa]s not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." *Abbasi*, 137 S. Ct. at 1856. *Abbasi* reaffirmed the holding of *Bivens* itself and the availability of *Bivens* actions "in th[e] common and recurrent sphere of law enforcement." *Abbasi*, 137 S. Ct. at 1857 ("The settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere."). This Court does not interpret *Abbasi* as sanctioning all *Bivens* claims for allegedly unconstitutional searches and seizures in light of the discussion in *Abbasi* of the "context" in which *Bivens* case arises, *see* Section IV.A, *supra*, and the fact that the Supreme Court has previously rejected a *Bivens* claim for an allegedly unconstitutional search and seizure, *see U.S. v. Verdugo-Urquidez*, 494 U.S. 259 (1990). The allegations that the Searches were conducted by SSA agents in order to determine whether Plaintiffs were actually disabled and whether Plaintiffs' attorney was in compliance with SSA regulations take Plaintiffs claims outside "th[e] common and recurrent sphere of law enforcement." *Id.*

The determinative feature of Plaintiffs' case is that it involves the Social Security program. This fact alone "cause[s the C]ourt to hesitate" before concluding that "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing [Plaintiffs'] damages action to proceed." *Id.* at 1858. Consequently, there is a "special factor counselling hesitation" and Plaintiffs *Bivens* claims for damages must be dismissed. *Id.* at 1857 (quoting Carlson, 446 U.S. at 18 (1980)).

## V. Conclusion

IT IS HEREBY ORDERED THAT:

1. Plaintiffs' Motion for Reconsideration of the Berryhill Order is DENIED;
2. Plaintiffs' Motion for Reconsideration of the Villasenor and Sanchez Order is DENIED; and
3. Plaintiffs only remaining claims—their claims for damages against Defendants Hagar, Tran, Pilcher, and Patel—are DISMISSED with prejudice.
4. The Clerk of the Court shall enter judgment for Defendants and against Plaintiffs.

Dated: January 3, 2018

Hon. William Q. Hayes
United States District Court