UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANH VAN THAI, DON DOAN, TOMMY
NGUYEN, and ROES 1-100, on behalf of
themselves and all others similarly
situated,

Plaintiffs,

v.

COUNTY OF LOS ANGELES;
WILLIAM VILLASENOR; DULCE
SANCHEZ; and STATE AND/OR
LOCAL AGENTS LADA DOES 1-10,

Defendants.

Case No.:  15-cv-583-WQH-NLS

**ORDER**

HAYES, Judge:

The matters before the Court are the Motion for Partial Summary Judgment (ECF No. 198) and the Supplemental Motion for Partial Summary Judgment (ECF No. 201) filed by Plaintiffs Anh Van Thai, Don Doan, and Tommy Nguyen.

I.   **BACKGROUND**

On April 10, 2020, the Court of Appeals for the Ninth Circuit reversed the dismissal of several claims in this case and remanded the action to this Court. (ECF No. 149). On February 19, 2021, Plaintiffs Anh Van Thai, Don Doan, Tommy Nguyen, and Roes 1

through 100 filed a Fourth Amended Class Action Complaint ("FAC")[1] against Defendants William Villasenor, Dulce Sanchez, County of Los Angeles ("County"), and "State and/or Local Agents LADA Does 1-10," the operative complaint in this matter. (ECF No. 180). Plaintiffs allege that in early 2014, Defendants Villasenor and Sanchez forcibly entered Plaintiffs' homes and unlawfully interrogated them about their Social Security applications, pursuant to a County of Los Angeles policy. Plaintiffs bring fourteen federal constitutional and state law claims against Defendants, including the first claim for "Violations of Title 42 U.S.C. §§ 1983, 1985—Unlawful Search and Seizure (Use of Unreasonable Force and Restraint with weapons in January-March 2014 searches and seizures);" the second claim for "(Due Process – Fifth Amendment) Fabrication of False Evidence by Reports—Violation of Civil Rights 42 U.S.C. § 1983;" and the third claim for "(Due Process – Fifth Amendment) Violation of Civil Rights 42 U.S.C. 1983." (*Id.* at 21-23).

On May 10, 2021, Defendant County filed a Motion to Dismiss the FAC (ECF No. 191), and Defendants Villasenor and Sanchez filed an Answer to the FAC (ECF No. 192).

On June 29, 2021, Plaintiffs filed a Motion for Partial Summary Judgment "on the issue of defendants' liability for violations of the plaintiffs' Fourth Amendment [rights]" under 42 U.S.C. § 1983. (ECF No. 198-1 at 5). On July 9, 2021, Plaintiffs filed a Supplemental Motion for Partial Summary Judgment "on the issue of defendants' liability for violations of the plaintiffs' Fifth Amendment rights" under 42 U.S.C. § 1983. (ECF No. 201-1 at 5).

On July 19, 2021, Defendants filed an Opposition to the Motion for Partial Summary Judgment. (ECF No. 204). On July 26, 2021, Defendants filed an Opposition to the Supplemental Motion for Partial Summary Judgment. (ECF No. 206).

---

[1] The Court denied Plaintiffs' Motion for Class Certification on October 14, 2021. (ECF No. 233). Plaintiffs are proceeding individually at this stage in the litigation.

On July 27, 2021, Plaintiffs filed a Reply in support of the Motion for Partial Summary Judgment. (ECF No. 208). On August 2, 2021, Plaintiffs filed a Reply in support of the Supplemental Motion for Partial Summary Judgment. (ECF No. 212).

On August 12, 2021, the Court issued an Order granting Defendant County's Motion to Dismiss the FAC as to the request for punitive damages and the request for attorneys' fees pursuant to 28 U.S.C. § 2412, and otherwise denying the Motion to Dismiss. (ECF No. 216).

On September 24, 2021, Defendants filed a Sur-Reply with leave of Court, addressing new evidence submitted by Plaintiffs on reply. (ECF No. 227).

## II.  FACTS[2]

During the time period relevant in this case, Defendants Villasenor and Sanchez were employed by Defendant County as Senior Investigators with the Los Angeles District Attorney's ("LADA") Office. Defendant Villasenor states in a Declaration that he was assigned to the Los Angeles Unit of the United States Social Security Administration's ("SSA") Cooperative Disability Investigations ("CDI") Program ("CDI Unit") from approximately September 2013 through January 2018. Defendant Sanchez states in a Declaration that she was assigned to the Los Angeles CDI Unit from approximately September 2013 through late 2014.

The official SSA Office of the Inspector General ("OIG") website states:

---

[2] The parties filed evidentiary objections. (ECF Nos. 204-4; 206-4; 208-1 at 18; 212-1 at 20-21; 213). The objections to evidence not cited in this Order are denied as moot. Defendants' objections to the Los Angeles CDI Unit investigation files submitted by Plaintiffs on reply are addressed *infra* at n.4. The objections to evidence cited in this Order, other than Defendants' objections to the Los Angeles CDI Unit investigation files, are overruled. It is not clear that the evidence relied upon in this Order could not be presented in an admissible form at trial. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011) ("Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial."). Further, "if evidence submitted on summary judgment could create a genuine dispute of material fact, it is, by definition, 'of consequence in determining the action,' and therefore relevant. Conversely, if the submitted evidence does not create a genuine dispute of material fact, there is no need for the court to separately determine whether it is relevant because, even assuming it is not, it will not affect the ultimate summary judgment ruling." *Sandoval v. County of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (quoting Fed. R. Evid. 401)).

1
2
3
4
5
6
7

> SSA and OIG jointly established the CDI Program in Fiscal Year 1998, in conjunction with State Disability and Determination Services (DDS) and State or local law enforcement agencies, to effectively pool resources and expertise and prevent and detect fraud in SSA's disability programs. The Units investigate disability claims under SSA's Title II and Title XVI programs that State disability examiners believe are suspicious. The CDI program's primary mission is to obtain evidence that can resolve questions of fraud before benefits are ever paid. CDI Units also provide reports to DDS examiners during continuing disability reviews (CDRs) that can be used to cease benefits of in-payment beneficiaries.

8
9
10
11
12
13
14
15
16

(ECF No. 204-6 at 4).[3] On October 1, 2009, the SSA OIG, the SSA San Francisco Regional Office, the California Department of Social Services, and the Disability Determination Service Division entered into a Memorandum of Understanding ("MOU") to "continue operation of a CDI Unit in Los Angeles, CA to investigate allegations of fraud committed against the Social Security Administration's (SSA's) disability programs and related Federal and State benefit and insurance programs." (ECF No. 204-1 at 5). The MOU states that the Los Angeles CDI Unit would be staffed by a minimum of seven employees, including a Special Agent from the SSA OIG Office of Investigations, a SSA Management

17
18
19
20
21
22
23
24
25
26
27
28

---

[3] Defendants request that the Court take judicial notice of: (1) the official SSA OIG website regarding the CDI program; and (2) the LADA website regarding jurisdiction. (ECF Nos. 204-6; 206-6). Plaintiffs request that the Court take judicial notice of: (1) Defendants' opposition brief filed in the Court of Appeals for the Ninth Circuit; and (2) investigation files maintained by the Los Angeles CDI Unit regarding Plaintiffs Thai and Doan. (ECF No. 207). Plaintiffs' requests are opposed by Defendants. Pursuant to Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of "matters of public record" and facts that are "not subject to reasonable dispute because" the facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The Court grants Defendants' unopposed request that the Court take judicial notice of the official SSA OIG website regarding the CDI program (ECF No. 204-6 at 4-5). *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (courts may take judicial notice of information on government websites as long as there is no dispute as to the authenticity of the website or accuracy of the information). The Court denies Plaintiffs' request that the Court take judicial notice of the Los Angeles CDI Unit investigation files because the files are not public records and are not proper subjects of judicial notice. The Court declines to take judicial notice of the remaining requested documents, which the Court does not rely on in this Order. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

Support Specialist, two California Department of Health Care Services Fraud Investigators, and three California Department of Social Services employees. The MOU states that the Special Agent from the SSA OIG Office of Investigations is the "CDI Unit's Team Leader" and the "CDI Unit's final decision-making authority regarding day-to-day CDI Unit operations, subject to OIG management oversight." (*Id.* at 7).

Plaintiffs applied for Social Security benefits. A Los Angeles CDI Unit Summary Report of Investigation dated January 30, 2014, states that an investigation of Plaintiff Thai's Supplemental Security Income ("SSI") disability benefits claim was opened by the CDI Unit based on suspected malingering.[4] The Summary Report of Investigation states that on January 17, 2014, Defendants Villasenor and Sanchez interviewed Plaintiff Thai at her residence in San Diego. A second Los Angeles CDI Unit Summary Report of Investigation dated January 31, 2014, states that an investigation of Plaintiff Doan's SSI disability benefits claim was opened by the CDI Unit based on suspected malingering. The Summary Report of Investigation states that on January 22, 2014, Defendants Villasenor and Sanchez interviewed Plaintiff Doan at his residence in San Diego.

Plaintiff Thai states in a Declaration that two officers came to her home wearing "police uniforms" and carrying visible guns. (ECF No. 180-5 at 2). Plaintiff Thai states that the officers "banged on the door of [her] home," and "unexpectedly barged into [her] home without warning." (*Id.*). Plaintiff Thai states that the officers "threatened [her] with denial of [her] benefits claim if [she] did not answer their questions." (*Id.*). Plaintiff Thai states that she "was fearful of [the officers] because they carried guns." (*Id.*). Plaintiff Thai

---

[4] Although the Court has denied Plaintiffs' request that the Court take judicial notice of the Los Angeles CDI Unit investigation files, the Court has considered the sections of the files identified in this Order because it is not clear that the sections relied upon could not be presented in an admissible form at trial. *See Comite de Jornaleros*, 657 F.3d at 964 n.7. The Court has reviewed Defendants' objection that the investigation files were untimely filed and Defendants' request that the Court strike the investigation files because they were filed on the public record in violation of the September 23, 2020 Protective Order (ECF No. 167). Defendants have had the opportunity to address the substance of the investigation files in their Sur-Reply. The Court concludes that the Clerk of the Court shall seal the investigation files, ECF Nos. 207-2 and 207-3. Defendants' request that the Court strike the investigation files is denied.

states that she "was frozen in terror and tried as best as [she] could to answer their questions." (*Id.*).

Plaintiff Doan states in a Declaration that "a white man and a[] Hispanic white woman" came to his house "carrying police badges and guns." (ECF No. 180-6 at 2). Plaintiff Doan states that the officers "knocked on the door and raised their jackets . . . to make sure that [Plaintiff Doan saw] the weapons." (*Id.*). Plaintiff Doan states that the officers "just walked through the front door" without asking permission. (*Id.* at 3). Plaintiff Doan states that the officers "repeatedly asked [him] to describe [his] illness and the reasons [he] filed for disability. [The officers] kept displaying the weapons by raising the jackets' flaps." (*Id.*).

Plaintiff Nguyen states in a Declaration that two agents came to his house "carrying police badges and guns." (*Id.* at 7). Plaintiff Nguyen states that the officers "raised their jackets after [he] opened the door to make sure that their guns [were] visible" and "just walked inside [Plaintiff Nguyen's] home." (*Id.* at 8). Plaintiff Nguyen states that the officers "kept asking [him] about [his] illnesses" and "made up facts." (*Id.*). Plaintiff Nguyen states that the officers told him that the officers "had been putting [Plaintiff Nguyen] under police surveillance . . ., and that [he] could go to jail for filing fraudulent disability applications." (*Id.*). Plaintiff Nguyen states that the officers "kept moving around the living room" and made sure that their weapons were displayed throughout the questioning. (*Id.* at 9).

Defendants Villasenor and Sanchez state in their Declarations that while conducting interviews for the CDI Unit, they would "identify [themselves] as being from the Social Security Administration and display [their] SSA identification badge[s]." (ECF Nos. 204-2 at 2; 204-3 at 2). Defendants Villasenor and Sanchez state that they would "intentionally wear oversized clothing to conceal [their] firearms." (ECF Nos. 204-2 at 2; 204-3 at 2). Defendants Villasenor and Sanchez state that they "never entered a home without permission and [] never told anyone they were required to answer [their] questions." (ECF Nos. 204-2 at 3; 204-3 at 3).

Plaintiff's Thai's application for Social Security benefits was denied. Plaintiffs Doan and Nguyen cancelled their benefits applications.

## III.  LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment bears the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *See Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The nonmoving party cannot defeat summary judgment by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate." *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## IV.    DISCUSSION

Plaintiffs assert that they are entitled to partial summary judgment on the issue of Defendants' liability for violations of Plaintiffs' Fourth and Fifth Amendment rights under 42 U.S.C. § 1983. Plaintiffs contend that the Court of Appeals for the Ninth Circuit has already "held that County investigators acted under color of state law." (ECF No. 198-1 at 14). Plaintiffs contend that Defendants Villasenor and Sanchez violated Plaintiffs' Fourth Amendment rights by entering Plaintiffs' homes without Plaintiffs' consent while "visibly armed" and by "questioning [Plaintiffs] to generate a fraud report, effecting a seizure." (ECF No. 198-1 at 13). Plaintiffs contend that Defendants Villasenor and Sanchez violated Plaintiffs' Fifth Amendment rights by coercing Plaintiffs to answer questions during an interrogation without giving *Miranda* warnings and by fabricating false evidence of malingering. Plaintiffs contend that Defendant County is liable for the violations because "[t]he County maintains a policy and practice of carrying out CDI investigation[s]" by "conducting warrantless searches with visibly armed agents without probable cause or reasonable suspicion of a crime" and "conducting un-Mirandized interrogations with visibly armed agents who issued a report of fraud to be inserted in plaintiffs' application at a subsequent administrative hearing." (ECF Nos. 198-1 at 21; 201-1 at 24).

Defendants contend that they are not liable under § 1983 because Defendants Villasenor and Sanchez were "acting at the direction of, and for the benefit of, the federal government and cannot be deemed state actors in connection with their work on behalf of the SSA's CDIU program." (ECF No. 204 at 11-12). Defendants contend that they did not cause Plaintiffs to be deprived of their Fourth Amendment rights, and "[a]t a minimum, there is a genuine dispute of fact as to whether Plaintiffs' Fourth Amendment rights were violated." (*Id.* at 18). Defendants contend that the Fifth Amendment Due Process Clause does not apply, the interviews did not require *Miranda* warnings, and Plaintiffs fail to establish that they were coerced or interrogated in violation of the Fifth Amendment. Defendants further contend that there is no evidence that the County maintained a custom, practice, or policy that was the moving force behind the alleged violations.

8

To prove a violation of § 1983 by an individual defendant, a plaintiff must demonstrate (1) that the defendant caused the plaintiff to be deprived of a right secured by the Constitution or laws of the United States (2) while acting under color of state law. *See Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). The Fourth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects the people against "unreasonable searches and seizures." U.S. CONST. amend. IV. "A Fourth Amendment search occurs when a government agent obtains information by physically intruding on a constitutionally protected area or infringes upon a reasonable expectation of privacy." *Whalen v. McMullen*, 907 F.3d 1139, 1146 (9th Cir. 2018) (citations omitted); *see id.* ("[W]hen the government physically occupies private property for the purpose of obtaining information, a Fourth Amendment search occurs . . . ."). A Fourth Amendment seizure occurs when there is "an intentional acquisition of physical control" by a government agent, and a "reasonable person would have believed that he was not free to leave" considering all of the circumstances. *United States v. Karim Hussein Al Nasser*, 555 F.3d 722, 728-29 (9th Cir. 2009). "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *LaLonde v. County of Riverside*, 204 F.3d 947, 954 (9th Cir. 2000) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)).

The Due Process Clause of the Fifth Amendment "prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States." *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005), *as amended* (Feb. 24, 2005). "[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc). The Self-Incrimination Clause of the Fifth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. When a person is questioned by the government, if a truthful answer might incriminate him in a future criminal

proceeding, the Self-Incrimination Clause provides him with the privilege to refuse to answer. *See Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). Ordinarily, if the person does not assert the privilege and answers the question, his answer is considered voluntary, not "compelled." *Minnesota v. Murphy*, 465 U.S. 420, 429 (1984). The privilege against self-incrimination requires that a person be advised of certain rights when "in custody" and "subjected to interrogation." *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Generally, § 1983 "provides no cause of action against federal agents acting under the color of federal law." *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995). "[F]ederal officials can only be liable under section 1983 where there is a sufficiently close nexus between the State and the challenged action of the federal actors so that the action of the latter may be fairly treated as that of the State itself." *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1258 (9th Cir. 2008).

Although the Court of Appeals for the Ninth Circuit has not directly addressed the issue, several courts have recognized that, in some circumstances, a state official may act under color of federal law and therefore not be subject to suit under § 1983. *See, e.g.*, *Askew v. Bloemker*, 548 F.2d 673, 677-78 (7th Cir. 1976) (holding that local law enforcement officers employed by the St. Louis Police Department and assigned as full-time members of the St. Louis Office for Drug Abuse Law Enforcement, part of the U.S. Department of Justice, were acting under color of federal law while participating in a drug raid and were not subject to suit under § 1983);[5] *see also Ellis v. Blum*, 643 F.2d 68, 83 n.17 (2d Cir.

---

[5] In *Askew*, the court considered the totality of the circumstances in determining whether the alleged actions occurred under color of state or federal law, including whether the officers (1) participated in a clearly federal investigation or in a federally instigated raid; (2) presented local, state, or federal identification, or were deputized as federal agents; (3) received payment from the local, state, or federal

1981) (holding that state officials administering a federal disability benefits program were acting under color of federal law for purposes of the Social Security Disability Act and stating that "[t]he mere fact that the federal agents happened to be state officials does not, without more, convert every intentional deviation from the federal path into an action taken under color of state law"); *Chilicky v. Schweiker*, 796 F.2d 1131, 1135 n.3 (9th Cir. 1986) (holding "for jurisdictional purposes only" that a state official was "acting under color of federal law" for purposes of the Social Security Disability Act by administering a federally-funded disability program). However, "anyone whose conduct is 'fairly attributable to the State' can be sued as a state actor under § 1983." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)).

In this case, on April 10, 2020, the Court of Appeals for the Ninth Circuit reversed the dismissal of several claims in this case and remanded the action to this Court. (ECF No. 149). The court stated, in relevant part:

> The district court erred in dismissing Thai's claims against William Villasenor and Dulce Sanchez, two Los Angeles District Attorney investigators assigned to work with federal agents in the Los Angeles Cooperative Disability Investigations Unit, alleging that they violated her constitutional rights. . . . [G]iven the complaint's allegations that Villasenor and Sanchez were state law-enforcement officials armed with visible police badges and weapons, who announced their official authority when questioning Thai, it is plausible that Villasenor and Sanchez were acting under color of state law. *See Filarksy v. Delia*, 566 U.S. 377, 383 (2012) (holding that "[a]nyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983") (quotation omitted).
>
> For the same reason, the district court erred in dismissing Doan's and Nguyen's claims that state law-enforcement agents violated their Fourth Amendment rights.

---

government; (4) had only a de minimis involvement in the actions; (5) acted pursuant to state or federal law; and (6) performed their day-to-day operations under the control or supervision of the local, state, or federal government. 548 F.2d at 677.

(*Id.* at 4-5). The conclusion of the court of appeals in addressing a motion to dismiss, where the factual allegations in the complaint are taken as true, has no effect on this Court in addressing a motion for summary judgment, where the plaintiff must come forward with evidence that would entitle the plaintiff to a directed verdict if the evidence went uncontroverted at trial. (*See id.* at 5 n.2 ("Although we reverse the district court's dismissal of Thai's, Doan's, and Nguyen's § 1983 claims alleging Fourth Amendment violations, we do not consider whether their claims would survive a motion for summary judgment.")).

The evidence provided by the parties in this case demonstrates that there is an issue of material fact as to whether Defendants Villasenor and Sanchez were acting under color of state law. In 2014, Defendants Villasenor and Sanchez were employed by Defendant County as Senior Investigators with the LADA's Office. Two Los Angeles CDI Unit Summary Reports of Investigation identify the officials who interviewed Plaintiffs Thai and Doan as "Los Angeles County District Attorney's Office (LADA) Investigators (INVS) Villasenor and Sanchez." (ECF No. 207-2 at 89, 178). Plaintiff Thai states in a Declaration that two officers came to her home wearing "police uniforms" and carrying visible guns. (ECF No. 180-5 at 2). Plaintiff Thai's live-in landlord states in a Declaration that he was present when the officers came to the home and that the officers "carried visible guns" and "police badges." (*Id.* at 3). Plaintiff Doan states in a Declaration that on April 30, 2014,[6] "[a] white man and a[] Hispanic white woman" came to his house "carrying police badges and guns." (ECF No. 180-6 at 2).[7]

Defendants Villasenor and Sanchez state in their Declarations that in early 2014, they were assigned to the Los Angeles CDI Unit. Villasenor and Sanchez state that while assigned to the CDI Unit, they were supervised by Glenn Roberts from the SSA OIG.

---

[6] The Los Angeles CDI Unit Summary Report of Investigation states that the interview of Plaintiff Doan occurred on January 22, 2014.

[7] Plaintiff Nguyen states in a Declaration that in March or April 2014, "two agents carrying police badges and guns" came to his house. (ECF No. 180-6 at 7). Plaintiff Nguyen has not come forward with evidence that Defendants Villasenor or Sanchez were the agents who allegedly came to his home.

Villasenor and Sanchez state that they "received all orders and assignments regarding CDI Unit investigations directly from Mr. Roberts" and only investigated applications for federal disability benefits. (*See* ECF Nos. 204-2 at 2; 204-3 at 2). Villasenor and Sanchez state that the badges they wore while conducting investigations for the CDI Unit were "SSA identification badge[s]" and that when approaching someone for an interview, they would "identify [themselves] as being from the Social Security Administration." (ECF Nos. 204-2 at 2; 204-3 at 2). The official SSA OIG website states:

> SSA and OIG jointly established the CDI Program in Fiscal Year 1998, in conjunction with State Disability and Determination Services (DDS) and State or local law enforcement agencies, to effectively pool resources and expertise and prevent and detect fraud in SSA's disability programs. The Units investigate disability claims under SSA's Title II and Title XVI programs that State disability examiners believe are suspicious. The CDI program's primary mission is to obtain evidence that can resolve questions of fraud before benefits are ever paid. CDI Units also provide reports to DDS examiners during continuing disability reviews (CDRs) that can be used to cease benefits of in-payment beneficiaries.

(ECF No. 204-6 at 4). A 2009 MOU to continue operation of the Los Angeles CDI Unit, to which Defendant County is not a party, states that a Special Agent from the SSA OIG Office of Investigations is the "CDI Unit's Team Leader" and the "CDI Unit's final decision-making authority regarding day-to-day CDI Unit operations, subject to OIG management oversight." (ECF No. 204-1 at 7).

Viewing the facts in the light most favorable to Defendants, a reasonable juror could conclude that at the time of alleged actions, Defendants Villasenor and Sanchez were acting under color of federal law, rather than color of state law. Accordingly, Plaintiffs are not entitled to summary judgment on the issue of the liability of Defendants Villasenor and Sanchez for violations of Plaintiffs' Fourth and Fifth Amendment rights under 42 U.S.C. § 1983. Further, the evidence regarding the alleged constitutional violations consists largely of competing Declarations by Plaintiffs and Defendants, which require a weighing

of the evidence and a determination of credibility that are the functions of the jury, not of the Court on a motion for summary judgment.[8]

"To bring a § 1983 claim against a local government entity, a plaintiff must plead that a municipality's policy or custom caused a violation of the plaintiff's constitutional rights." *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 992-93 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976)). The plaintiff must show "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

In this case, the Court has concluded that there are issues of material fact as to whether Plaintiffs were deprived of their constitutional rights and as to whether Defendants Villasenor and Sanchez were acting under color of state law at the time of the alleged deprivations. Plaintiffs have failed to demonstrate that they were deprived of a constitutional right or that any County policy caused the alleged deprivation as a matter of law. Further, the evidence relied upon by Plaintiffs to support the assertion that the County's policies caused the alleged violations is the evidence of the alleged underlying violations by Defendants Villasenor and Sanchez. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (alteration in original)). Plaintiffs are not entitled to summary judgment on the issue of the liability of Defendant County for violations of

---

[8] Assuming that Defendants Villasenor and Sanchez were acting under color of state law, Plaintiffs' claim that Defendants are liable under § 1983 for violations of the Fifth Amendment Due Process Clause fails because the Fifth Amendment Due Process Clause only applies to the federal government. *See Castillo*, 399 F.3d at 1002 n.5.

Plaintiffs' Fourth and Fifth Amendment rights under 42 U.S.C. § 1983. Plaintiffs' Motions for Partial Summary Judgment are denied.[9]

## V.   CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion for Partial Summary Judgment (ECF No. 198) and Supplemental Motion for Partial Summary Judgment (ECF No. 201) are denied.

IT IS FURTHER ORDERED that the Clerk of the Court shall seal ECF Nos. 207-2 and 207-3.

Dated:  October 28, 2021

Hon. William Q. Hayes
United States District Court

---

[9] Defendants request that the Court grant summary judgment for Defendants pursuant to Federal Rule of Civil Procedure 56(f)(1). Rule 56(f)(1) gives the court discretion to "grant summary judgment for a nonmovant." The Court declines to exercise its discretion in this case.